# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| **Albert Darnell Alexander, III,** ) | Case No. 2:15-cv-4994-DCN-MGB |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **Commissioner, Social Security Admin.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

Plaintiff, through counsel, seeks judicial review of an unfavorable final administrative decision denying benefits on his applications for a period of disability and disability benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-434, 1381-1383f. This matter was referred to the assigned United States Magistrate Judge for review pursuant to Local Civil Rule 73.02(B)(2)(a) and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' briefs, administrative record, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision should be **affirmed**, based on the following proposed findings of fact and conclusions of law:

## I. Relevant Statutory Law

The Social Security Act ("SSA") provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are disabled within the meaning of the statute. 42 U.S.C. § 423(a). The "plaintiff for disability benefits bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Under the SSA, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations set forth a five-step sequential process that considers a plaintiff's age, education, and work experience in addition to the plaintiff's medical condition. 20 C.F.R. §§ 404.1520(a). To be entitled to benefits, the plaintiff "(1) must not be engaged in substantial gainful activity, i.e., currently working; and (2) must have a severe impairment that (3) meets or exceeds the listings of specified impairments, or is otherwise incapacitating to the extent that the plaintiff does not possess the residual functional capacity to (4) perform [plaintiff's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The plaintiff bears the burden of production and persuasion through the fourth step. If the plaintiff reaches step five, the burden shifts to the government to provide evidence that other work exists in significant numbers in the national economy that plaintiff can do. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). The present case was decided at step five.

## II. Background

The facts have been extensively set forth in the ALJ's decision (AR 17-33) and in the parties' briefs (DE# 20, 21), and need only be summarized here. Plaintiff was born August 18, 1965. (AR 40, 300). He was age 43 (a "younger" person) on the alleged disability onset date of November 30, 2011. See 20 C.F.R. § 404.1563 (defining "younger" as age 18-49). Plaintiff graduated from high school, is literate, and communicates in English. (AR 34, 40, 358-60). He is single and has no dependents. (AR 1016). As of 2008, he lived alone, but later moved in with his aunt at her house on Isle of Palms, South Carolina for financial reasons. (AR 37, 55-56, 378, 402).

Plaintiff has past relevant work experience: 1) as a department manager at a grocery store (skilled, medium exertional level), 2) in mobile home sales (skilled, light exertional level), and 3) as a movie extra (unskilled, light exertional level) (AR 40, 79, 360, 434). In 2008, Plaintiff worked

full-time as a department manager at a Piggly Wiggly grocery store. (AR 556, 981). After termination of his employment in November 2008 (which Plaintiff attributes to the effects of sleep apnea, i.e. he was fired for falling asleep at work on night shift), Plaintiff received unemployment benefits in 2009. (AR 130, 612, 981).[1] During 2009-2013, Plaintiff worked as an extra on television/movies sets. His reported earnings were less than $4,000.00 annually, which was deemed insufficient to amount to substantial gainful activity. (AR 30, Findings 1, 2).

For daily activities, Plaintiff indicates he does light yard work, grocery shops, microwaves tv dinners (he says he is "not into cooking"), goes shopping at Wal-Mart (sometimes for several hours). (AR 32, 380-81). For hobbies, he paints, draws, and exercises. (AR 32, 382, 734, 743-44 indicating in 2009 and 2010 that he "works out"). Plaintiff walks with a normal gait without assistance. (AR 978, 1022). He is able to take care of his own personal hygiene, dress himself, clean house, pay bills, manage his own funds, use checking and savings accounts (although he says he makes careless errors), and does not need reminders to take medication. (AR 32, 380-81, 980-82, 1015). He indicates that he can understand and get along with others, including authority figures. (AR 32, 383-84). He indicates he has no trouble seeing, understanding, and using his hands (AR 407).[2] He reported on his application that he has no side effects from medication (AR 385), but inconsistently noted "nausea/stomach problems" for Advil, nasal spray, and Goody's powder." (AR 396).[3] He has also taken Adderol, Valium, and Cymbalta for trial periods (AR 409, 981).

---

[1] "While receiving unemployment benefits may not always preclude a finding of disability, it is among the many factors that may well support a determination that a claimant is not credible, inasmuch as representing to a state employment agency that one is able to work is usually inconsistent with a claim of disability." *Clark v. Astrue*, 2012 WL 6728441, *3 (W.D.N.C. 2012); *see also Caler v. Colvin*, Case No. 1:14–cv–1565–RBH–SVH, 2015 WL 1862794, *10 (D.S.C. April 23, 2015) (same).

[2] Although Plaintiff later claimed in 2012 that his eyesight had worsened (AR 413-14), medical examination in 2012 found that Plaintiff's vision was 20/30 without glasses. (AR 977-78; see also AR 683, 685 "normal" eyesight).

[3] "Goody's powder" is a non-prescription over-the-counter product containing "acetaminophen, aspirin, and caffeine.

Plaintiff testified that Adderall provided some relief of ADHD symptoms, but could make him drowsy. (AR 34, 74-75, 981).

Plaintiff indicates he is able to drive a car, but does not drive because his license was suspended in 2006 or 2007 for a DUI offense. (AR 34, 56-57, 980, 1015).[4] The ALJ noted that Plaintiff has a history of seeking multiple narcotic prescriptions from multiple doctors, who have noted Plaintiff's "drug-seeking" behavior. (AR 35, citing Exs. 16F/13, 47F/10). For example, Plaintiff's November 15, 2007 urine analysis tested positive for marijuana and amphetamines (AR 481, 504) and he was discharged from Dr. Patricia Campbell's Springhall Family Practice for "noncompliance" with the contractual agreement regarding narcotic use. (AR 477, indicating that Plaintiff was "pushing hard" for a Valium prescription). In 2008-2009, Dr. Abou-Fayssal at MUSC saw Plaintiff and refused to prescribe narcotic medication for him (AR 616, Ex. 16F/13). In May 2008, Dr. Mark Hoy indicated he had "made clear" to Plaintiff that he "would not be willing to habitually supply him with pain medications" (AR 631). In November 2008, Dr. Jeffrey Folk refused to take Plaintiff as a patient for opioid/narcotic substances. (AR 600, Ex. 15F/3). In December 2013, Dr. Jennings found only mild symptoms and refused to prescribe Oxycontin for Plaintiff, even though Plaintiff was specifically asking for it. (AR 35, citing Exs. 16F, 47F/10). Plaintiff has at times denied past use of illegal drugs (AR 981), but medical notes indicate he admitted in 2008 to using intravenous cocaine and marijuana. (AR 130, 504, 535, 613). The ALJ noted that Plaintiff also continues to smoke cigarettes against doctor's advice. (AR 31, 981).[5] One

---

[4] Plaintiff reported drinking six drinks daily during such period, but indicates he no longer drinks excessively. (AR 982). Plaintiff also indicates he served one year in prison for a 1996 felony conviction for cocaine use. (AR 130, 292, 980). Although this occurred within the fifteen year period used in determining past relevant work experience, see 20 C.F.R. § 404.1565, Plaintiff worked at a number of jobs during such time period, and thus, such conviction does not appear to affect the analysis of past relevant work in any material way.

[5] Smoking can aggravates sinusitis. See, e.g., http://www.webmd.com/allergies/sinusitis-and-sinus-infection; and http://www.mayoclinic.org/diseases-conditions/chronic-sinusitis/symptoms-causes.

assessment indicates that "claimant's condition is expected to improve quickly, however, if he complies with rx'd medication and refrains from substance abuse." (AR 130).[6]

On October 14, 2011, Plaintiff filed applications for DIB and SSI, alleging disability beginning on November 23, 2009 due to "sleep apnea, headaches, ADHD, occipital nerve damage, anxiety, hypertension, carpal tunnel in both wrists, overall pain, torn ligaments on both sides of head, TMJ, and memory loss." (AR 27, 359). Plaintiff's counsel later moved to amend his alleged onset date to November 16, 2008.[7] Plaintiff's counsel characterized Plaintiff's impairments as "cervical degenerative disc disease, chronic headaches and pain, attention deficit hyperactivity disorder, anxiety, and depression." (AR 434).[8] In his 2011 applications, Plaintiff says he stopped working on October 19, 2011. (AR 358-59). When asked on the printed form to "Please explain why you stopped working," Plaintiff responded "I work as an extra through a film studio and there is no work at this time." (AR 359). Additionally, Plaintiff testified at the hearing that he had worked after his alleged onset dated in 2008 doing intermittent work as a film extra until August 13, 2013, but that "there is no work at this time." (AR 58-59).[9]

---

[6] The Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 105(a)(1)(C), 110 Stat. 852, amended the definition of "disability" under Title II of the Social Security Act to bar benefits for any individual whose disability is based on alcoholism or drug addiction. 42 U.S.C. 423(d)(2)(C). Title II now states: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Id.

[7] The ALJ noted that Plaintiff had previously filed DIB and SSI applications on February 23, 2009. In the present case, Plaintiff's counsel requested reopening of the prior applications, but the ALJ found such request to be "academic because the claimant is not found to be disabled on the current application." (AR 27). The ALJ found that Plaintiff was not disabled from November 16, 2008 through the date of decision on April 4, 2014. (AR 42).

[8] Degenerative disc disease describes "the symptoms of pain and possibly radiating weakness or numbness stemming from a degenerated disc in the spine." See www.spine-health.com.

[9] Such statements suggest that he was not working because the type of work he desired was not available, not because of any disabling impairment. *See, e.g., Guthrie v. Colvin*, 2014 WL 2575318, *7 (E.D.N.C. 2014).

The applications were denied initially and on reconsideration. (AR 157-64, 166-69). Upon Plaintiff's request, an administrative law judge ("ALJ") scheduled a hearing. In order to develop the record, the ALJ ordered several comprehensive consulting evaluations and several independent reviews by state agency physicians. At the hearing on February 20, 2014, Plaintiff (represented by counsel) and a vocational expert ("VE") testified (AR 59-83). Plaintiff testified that his main physical problem is nerve damage in his neck, which allegedly causes severe pain that radiates from his head down his back. (AR 69). Plaintiff takes pain medication and complains of recurring headaches. (*Id.*). He testified that his arms and hands get numb from carpal tunnel syndrome (AR 69-70). Plaintiff says he has occasional panic attacks and anxiety, and depressive symptoms due to chronic pain. (AR 72). Plaintiff indicated he does not like to be around crowds or loud noises. (AR 73).[10] Plaintiff says his attention deficit hyperactivity disorder ("ADHD") affects his ability to focus and concentrate, but that Adderall provided some relief. (AR 73-74; 378 "on meds I do better"). He also has indicated that Xanax improved his symptoms. (AR 37, citing Ex. 10F; AR 532).

On April 4, 2014, the ALJ issued a decision, finding that Plaintiff was not disabled from the alleged onset date through the date of decision. (AR 27-42). On October 22, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision for purposes of judicial review (AR 1-6).

## III. Medical Evidence

In his decision, the ALJ discussed the medical evidence at considerable length. Such evidence includes, but is not limited to, the following evidence. With respect to alleged problems

---

[10] In assessing Plaintiff's credibility, the ALJ observed that Plaintiff had worked as an "extra" on movie/television sets "which are typically loud with many people." (AR 34). Plaintiff also indicated in his application that he had worked in 2005 as a "ride operator," which would also be a very loud place with many people. (AR 360).

of the cervical spine (i.e. neck), Plaintiff's symptoms on his MRI were "mild to minimal". (AR 434-35, 492, cervical MRI 11/21/2007). On October 2012, Dr. Christopher Merrill evaluated Plaintiff for complaints of low back pain, and found that the cervical spine x-rays showed "slight" anterolisthesis at C-4. (AR 439).[11] Plaintiff underwent another MRI in 2013 which revealed only "mild" findings. Medical examinations have repeatedly reflected that Plaintiff is able to walk with a normal gait without assistance. (AR 978, 1022). EMG/NCS found some evidence of "mild to moderate" carpal tunnel. (AR 436, citing Ex. 10F).

Several doctors, including Dr. Shaun Scott (CHS ENT Associates) and Dr. Mark Hoy of MUSC ENT, have evaluated Plaintiff and diagnosed "mild" sleep apnea. (AR 435-36, 494, 502). Treatment notes indicate that Plaintiff was given a C-PAP device for his sleep apnea, but he lost it "years ago." (AR 608-09). In 2008, Dr. Michael Frye gave Plaintiff a Bi-PAP device, which significantly helped Plaintiff's sleep. (*Id*. noting that patient reports "sleeping better" and that "he can definitely tell" it was helping). The ALJ observed that doctors have indicated that such device has corrected any obstructive sleep events for Plaintiff. (AR 31, citing Ex. 16F/8).

Plaintiff has a long history of sinus problems and/or infections. Plaintiff has undergone several surgical procedures, including a parotidectomy (January 2008), endoscopic sinus surgery (May 2008), and a sinusotomy (July 2008). (AR 436, summarizing medical history through 2012).[12] Dr. John McDonald in May, June, and August 2008, found "mild" sinusitis, but the results of physical examination were otherwise "unremarkable." He also prescribed Xanax for Plaintiff and referred him to a neurologist and a psychiatrist. (AR 436, citing Ex. 10F). After Plaintiff's

---

[11] This is a form of spondylolisthesis. The amount of forward disc slippage is graded on a scale from 1 to 4, with grade 1 being mild (less than 25% slippage). See http://www.spine-health.com/glossary/anterolisthesis.

[12] Parotidectomy is described as "the removal of the parotid gland, a salivary gland near the ear." See http://medical-dictionary.thefreedictionary.com/parotidectomy. Plaintiff had a partial left parotidectomy for a benign neoplasm in the salivary gland. (AR 494). A sinusotomy is a surgical operation in which an incision is made in a sinus to prevent or reduce inflammation. See https://en.wikipedia.org/wiki/Sinusotomy.

sinus surgery in July 2008, he saw Dr. Mark Hoy of MUSC, who noted that Plaintiff's "sinuses are doing fairly well" and that his only sinus medication at that time was Flonase. (AR 618-19). He diagnosed sinusitis and prescribed Avelox for some post-operative infection. (AR 623).

With regard to alleged anxiety, MUSC Dr. Abou-Fayssal evaluated Plaintiff and found him to be "mildly anxious." Such doctor noted that Plaintiff's symptoms improved with medication. (AR 604, Ex. 16F). Numerous visits to Nason Medical Center in 2009-2010 (for temporary ailments such as cough, sore throat, "bump on his leg," rash on left hip, etc.) repeatedly reflect "no back or joint pain" and "no unusual anxiety or evidence of depression." (AR 779-818). Dr. George Durst M.D. saw Plaintiff in 2008 for Plaintiff's complaints of headache, TMJ, neck pain, and anxiety. (AR 580-86). He gave Plaintiff a Toradol injection and some Cymbalta samples, and referred Plaintiff to pain management. (AR 437). In November 2008, Dr. Jeffrey Folk (Pain Assoc. of CHS) saw Plaintiff for headaches and indicated that Plaintiff obtained some relief with a TENS unit, Valium and Percocet injections. (Ex. 15F). Dr. Mark Beale also diagnosed ADD and anxiety.

Plaintiff underwent a comprehensive consulting medical examination in February 2012 with Dr. Harriett Steinert, M.D. (AR 977-78). Dr. Steinert found no evidence of head trauma; full range of motion ("ROM") in the cervical spine with no neck tenderness; full ROM of all joints and extremities except the right fifth finger; no tenderness of any joints; no sensory or motor deficits; no muscle atrophy; normal grip strength; normal equal fine and gross motor skills in both hands, patient can flex at the waist to 90 degrees; no tenderness to palpation of the spine; negative straight leg raises; patient able to walk with a normal gait; vision 20/30 without glasses; and patient is oriented to person, place, and time. (AR 977-788). Dr. Steinert noted diagnosis of anxiety and depression, chronic head pain, sleep apnea, ADHD, bilateral carpal tunnel, and TMJ syndrome, but did not indicate any functional limitations. (*Id*.).

Plaintiff also underwent a comprehensive psychological examination on February 29, 2012 with consulting examiner Dr. Jennifer Bennice (AR 980-984, Ex. 39F). Dr. Bennice found that Plaintiff was oriented x4, normal speech and motor functioning, good insight and judgment, MMSE score within normal range, but observed some impairment in concentration/memory during the evaluation. Dr. Bennice assessed, at most, moderate symptoms. According to the notes, Plaintiff reported that his psychological treatment in 2009-2011 had been "extremely helpful." (AR 982). Plaintiff said he discontinued such treatment for financial reasons, but did not seek any treatment services available to low-income individuals. Dr. Bennice indicated that "it seems likely that his daily and occupational functioning would improve if he were able to resume his previous treatment." (*Id.*).

On November 6, 2012, Plaintiff also underwent a mental status examination with psychologist Gene Sausser, Ph.D., who also assessed (at most) some moderate symptoms. (AR 1015-1018, Ex. 45F). Dr. Sausser observed that Plaintiff was oriented to person, place, and time, had no problems in speech or expression, had average intellectual ability, "thought processing was within normal limits and there were no difficulties in thought content," and had good impulse control, but observed that Plaintiff reported very little social contact and feeling depressed. (AR 1016-1017). Dr. Sausser opined that Plaintiff had "some minor issues in activities of daily living" but remained capable of performing "simple unskilled work related tasks." (AR 1017).

State agency physicians also reviewed Plaintiff's medical records and provided functional assessments. On March 19, 2012, Isabella McCall, M.D., assessed that Plaintiff remained physically capable of performing work at the medium exertional level, with some limitations.[13]

---

[13] Medium work involves lifting and carrying fifty pounds occasionally and twenty-five pounds frequently, pushing and pulling on an unlimited basis, and sitting, standing, and walking for six hours during an eight hour work day. 20 C.F.R. § 404.1567(c).

(AR 110-112). Dr. McCall assessed that Plaintiff had no limitation balancing, kneeling, crouching, or climbing ramps/stairs, and had no visual, communicative, or environmental limitations. (*Id*.). She assessed that Plaintiff could "frequently" stoop or crawl, "frequently" reach overhead bilaterally, and "occasionally" climb ladders, ropes, or scaffolds. (*Id*.). In December 2012, Dr. McCall's opinion was affirmed as written by a second state agency physician, Dr. William Cain, M.D. (AR 131-33).

On April 11, 2012 Camilla Tezza, Ph.D., reviewed Plaintiff's medical records and prepared an RFC mental assessment. She indicated that Plaintiff was "not significantly limited" in numerous abilities. For example, she found that Plaintiff was able to understand, remember, and carry out simple instructions, could sustain an ordinary routine without special supervision, could work with others and make simple work-related decisions, could complete a normal work day/week and attend work regularly, and could maintain attention and concentration for two hour blocks of time. She assessed moderate limitation only in Plaintiff's ability to follow <u>detailed</u> instructions and to maintain attention and concentration for <u>extended</u> periods. (AR 112). Additionally, in February 2014, Plaintiff submitted the assessment of Dr. Ajay Sood M.D., who had seen Plaintiff on one occasion, regarding his opinion of Plaintiff's mental abilities. (AR 40, citing Exs. 48F, 49F).

## IV.  The ALJ's Decision

The ALJ discussed the medical evidence at considerable length. After considering all of the evidence, the ALJ determined that Plaintiff's "neck disorder, headaches/head pain, back disorder, ADHD, and depression" qualified as "severe" impairments for purposes of the SSA (AR 30, Finding 3), but were not of listing-level severity. (*Id*., Finding 4). See 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(d), 1525, 1526.[14]

---

[14] The ALJ found several impairments to be non-severe. Evidence indicated successful treatment alleviated symptoms of asthma and sleep apnea. (AR 31). Plaintiff has not challenged this step of the decision.

The ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." (AR 34). The ALJ discussed various reasons, including that treating notes repeatedly indicated that Plaintiff's hobby was "working out," which is inconsistent with Plaintiff's allegations of debilitating pain. (AR 35, citing Ex. 20 F/7). The ALJ also discussed evidence from treating physicians regarding Plaintiff's drug-seeking behavior. (*Id.*, citing Ex. 16F/13, treating notes indicating "drug seeking;" Ex. 47F/10 treating notes indicating Plaintiff was seeking OxyContin in December 2013 despite mild symptoms).

The ALJ assessed the Plaintiff's work-related abilities on a function-by-function basis and determined that Plaintiff could lift and carry 20 lbs. occasionally and 10 lbs. frequently; stand, walk, and sit for 6 hours each in an 8 hour day; never climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; occasionally stoop, kneel, crouch, crawl, and reach overhead. (AR 33, Finding 5). In light of Plaintiff's pain symptoms, breathing issues, and medications, the ALJ restricted Plaintiff from exposure to excess vibration, respiratory irritants, and workplace hazards such as unprotected heights. (AR 33, 39). The ALJ also restricted Plaintiff to performing "simple, routine, repetitive tasks in a low stress setting, which is specifically defined to mean: no fast-paced production, only simple work-related decision, few or no changes in the work setting, and only superficial contact with the public." (*Id.*).

After determining that Plaintiff retained the RFC to perform less than a full range of light work with various restrictions, the ALJ determined that Plaintiff could not perform his past relevant work. (AR 40, Finding 6). The ALJ considered the Plaintiff's age, education, work experience, RFC, and the VE's testimony, and determined that there were jobs in significant numbers in the national economy that Plaintiff could perform, such as office clerk, office aide, and

grader/sorter. (AR 41, Finding 10). After considering the record as a whole, the ALJ concluded that Plaintiff was not disabled within the meaning of the SSA. (AR 42, Finding 11). The Appeals Council denied further review (AR 1-4). The ALJ's decision is the Commissioner's final decision.

## V. Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996). The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id*.; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## VI. Discussion

First, Plaintiff challenges the determination of Plaintiff's RFC by arguing that "the ALJ failed to adequately consider the effect of [Plaintiff's] chronic sinusitis on his functioning." (DE# 20 at 1). According to Plaintiff, "chronic sinusitis was a contributing factor to his headaches in

addition to his cervical spine and muscle condition" and "it is not clear [the ALJ] fully captured the limitations imposed by this complicated combination of impairments." (*Id*. at 12). Plaintiff suggests that there is "a greater link between these conditions." (*Id*.). In response, the Commissioner asserts that the ALJ properly considered the effect of Plaintiff's chronic sinusitis and headaches when considering Plaintiff's functioning.

RFC refers to the most a claimant can do despite his limitations and is an assessment based upon all of the relevant evidence, including descriptions of limitations, such as pain. 20 C.F.R. §§ 404.1545(a), 416.945(a); and see SSR 96-8p, 1996 WL 374184. It is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record. See 20 C.F.R. §§ 404.1546(c), 416.946(c) (2011) (assigning responsibility of RFC assessment at hearing level to ALJ). An ALJ assesses RFC based upon the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. *Id*.; SSR 96–8p (identifying RFC finding as administrative assessment and outlining criteria to be used).

Although Plaintiff appears to argue that his sinusitis was not adequately considered, the Commissioner correctly observes that: 1) Plaintiff did not even list sinusitis on his disability application as an impairment (AR 359);[15] 2) Plaintiff did not argue at the hearing that he was disabled by sinusitis; 3) "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision;"[16] and in any event, 4) the ALJ's decision reflects that Plaintiff's

---

[15] The designation of a particular impairment as severe or non-severe is not dispositive unless a decision is made at the second step of the sequential evaluation process because the ALJ considers the combined limiting effects of all of a claimant's impairments, severe and non-severe, throughout the subsequent steps of the process. 20 C.F.R. § 404.1523. Moreover, a diagnosis by itself does not entitle a claimant to disability benefits; "[t]here must be a showing of related functional loss." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

[16] *See Reid v. Comm'r of Soc. Sec*., 769 F.3d 861, 864 (4th Cir. 2014).

sinusitis was in fact expressly considered as part of the analysis of Plaintiff's headaches/head pain. (DE# 21 at 14, citing AR 35-36). The ALJ properly based his RFC findings on Plaintiff's subjective complaints, the objective medical evidence, and the medical opinion evidence.

Contrary to Plaintiff's allegation that his chronic sinusitis was not considered, the record reflects that the ALJ considered and weighed all the relevant evidence of record, including evidence of chronic sinusitis, related surgeries, and symptoms such as pain. For example, in discussing Plaintiff's pain from periodic headaches, the ALJ observed that "records noted that the cause of the headache was either migraine headaches, tension headaches, anxiety, <u>sinusitis</u>, or the etiology was not clear."(AR 36, emphasis added). The ALJ also specifically discussed the fact that in May 2008, Dr. Mark Hoy of MUSC performed "frontal sinusotomies in an effort to relieve subjective chronic facial pain associated with chronic sinusitis." (AR 36, citing Ex. 16F/49-51). In formulating RFC, the ALJ specifically indicated that the effects of Plaintiff's problems were considered in combination. (AR 33, "the undersigned has specifically considered the cumulative effects of the impairments on the claimant's ability to work").

The ALJ considered Plaintiff's complaints of pain and resulting functional limitations and specifically accounted for all of Plaintiff's credibly established limitations. (DE# 21 at 15, citing AR 33-40). The Commissioner asserts that the ALJ fully accounted for any functional limitations (including those resulting from Plaintiff's neck/back disorder and "headaches/head pain," of whatever origin) by limiting him to a restricted range of light work with certain restrictions. (DE# 21 at 15, citing AR 33). The ALJ limited Plaintiff's reaching and climbing, and also indicated that in light of Plaintiff's pain symptoms, breathing issues, and medications, he would restrict Plaintiff from exposure to excess vibration, respiratory irritants, and workplace hazards such as unprotected heights. (AR 39). To the extent that Plaintiff's sinusitis resulted in headaches and pain that could

affect his mental ability to concentrate, the ALJ accommodated mental functional limitation by restricting Plaintiff to performing "simple, routine, repetitive tasks in a low stress setting, which is specifically defined to mean: no fast-paced production, only simple work-related decision, few or no changes in the work setting, and only superficial contact with the public." (AR 33, Finding 5).[17]

Plaintiff argues that "the ALJ relied on his own lay opinion rather than competent medical evidence when making the RFC determination."  (DE# 20 at 11). Plaintiff suggests that "the entire physical functional capacity is based on the ALJ's own inexpert assessment of medical evidence." (*Id*.). In response, the Commissioner points out that the responsibility for determining a claimant's RFC rests with the ALJ. (DE# 21 at 11, citing 20 C.F.R. §§ 404.1546, 416.946). Such determination is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). In other words, "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 362 (3d Cir. 2011).[18]

Plaintiff further complains that "the ALJ afforded some weight to the opinion from non-examining State Agency medical consultant William Cain, M.D." and alleges that this was the only opinion regarding physical functioning in the record. (DE# 20 at 10, citing AR 39, 132-33). This is not accurate. The Commissioner correctly points out that two state agency physicians

---

[17] *See Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (the physical ability to perform a task differs from the mental ability to "stay on task," i.e. concentrate and maintain attention). The ALJ's decision adequately considered both physical and mental functional limitations. Here, Plaintiff has challenged only the physical RFC findings.

[18] For a detailed discussion of the difference between the RFC assessment, which is an administrative finding of fact, and the opinion evidence called the "medical source statement" or "MSS," see Social Security Ruling ("SSR") 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner." The Ruling explains that: "Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing: A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." *Id*. at *4.

opined that Plaintiff retained the RFC to perform work at the medium exertional level, within certain restrictions. (DE# 21 at 8). On March 19, 2012, Dr. Isabella McCall, M.D., a state agency physician, reviewed Plaintiff's medical records and assessed his functional abilities. In December 2012, Dr. McCall's opinion was affirmed as written by a second state agency physician, William Cain, M.D. (AR 131-33). The opinion of a nonexamining physician can provide substantial evidence when it is consistent with the record. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015). The Commissioner points out that "Plaintiff does not identify any physical evidence contrary to the physical RFC, he simply argues that the ALJ needed a medical opinion to formulate the RFC." (DE# 21 at 12). Substantial evidence supports the ALJ's decision.

Moreover, the Commissioner asserts that the "controlling regulations are explicit that the ALJ is free to fashion Plaintiff's RFC based on the medical evidence and he is not required to obtain a medical opinion to assist in reaching an RFC where, as here, there is sufficient evidence in the record for a decision." (DE# 21 at 1, 11); 20 C.F.R. §§ 404.1546, 416.946. An ALJ "is not required to rely on medical opinions to formulate an RFC assessment [and] is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." *Moore v. Colvin*, Case No. 0:15-cv-425-MGL-PJG, 2016 WL 1714117, *2 (D.S.C. Apr. 29, 2016) (quoting *Chandler,* 667 F.3d at 361); *Felton-Miller v. Astrue*, 459 F.App'x 226, 231 (4th Cir. Dec. 21, 2011) (same).

Plaintiff's argument amounts to an invitation to reweigh the evidence, which this Court may not do. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("it is not the province of this Court to reweigh conflicting evidence . . . or substitute [its] judgment for that of the ALJ."). Under the applicable standard of review for administrative decisions, the pertinent question is whether

the ALJ's decision is supported by substantial evidence. Here, there is substantial evidence of record to support the Commissioner's final decision that Plaintiff was not disabled within the meaning of the SSA.

Accordingly, the Magistrate Judge recommends that the Commissioner's final decision is supported by substantial evidence and should be **AFFIRMED**.

**IT IS SO RECOMMENDED.**

January 19, 2017
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

Plaintiff's attention is directed to the following **important notice**: